NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TANYA RAWLS,<br><br>            Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Civil Action No.:  20-9305<br><br>**OPINION** |

**CECCHI, District Judge.**

I.    **INTRODUCTION**

Before the Court is the appeal of Tanya Rawls ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for supplemental security income ("SSI") pursuant to Title II and/or Title XVI of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

II.   **BACKGROUND**

Plaintiff is currently a 51-year-old female with a GED. Tr.[1] at 62–63, 76. She previously worked as a recreation aid and patient transporter. *Id.* In June 2016, Plaintiff presented to her primary care provider for medical evaluation and possible referral to pain management, but she described her pain as 0/10 at the time. *Id.* at 19. Her blood pressure was recorded at 119/82 and her body mass index ("BMI") was 44.26, rendering Plaintiff morbidly obese. *Id.* Plaintiff received

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 6.

a diagnosis of essential hypertension, diabetes mellitus type II without complications, lumbago, gastritis, depressive disorder, hypercholesterolemia, hyperlipidemia, and vitamin D deficiency. *Id.* at 19. At that time, Plaintiff reported that she had stopped taking her diabetes medication against doctors' orders. *Id.* Plaintiff also indicated that she smoked 11–20 cigarettes per day and was not interested in quitting. *Id.* at 731–32. With her application for SSI, Plaintiff submitted two function reports, dated June 2016 and February 2017 respectively, in which she showed that she generally cared for her own personal needs, including by preparing meals, driving, shopping, managing finances, and performing household chores. *Id.* at 17, 225–26, 251–55. Further, Plaintiff noted that she attended church, crocheted, and socialized with her best friend and two nieces. *Id.*

Through diabetes maintenance visits during August and September 2016, Plaintiff presented as morbidly obese, but records showed that her diabetes mellitus did not result in any complications. *Id* at 20. In September 2016, Plaintiff reported that she was capable of performing her usual daily activities and did not experience any fatigue, fever, or weakness. *Id.* Plaintiff underwent a medical examination by Dr. Rambhai Patel in November 2016, at which she measured five foot four inches, 264 pounds (BMI of 45.7), and her blood pressure was 160/100. *Id.* at 20. Examinations of Plaintiff's lungs, heart, abdomen, lower extremities, chest, and lumbar spine were all normal. *Id.* Dr. Patel concluded that Plaintiff suffered from diabetes mellitus with the possibility of diabetic neuritis, lower back pain secondary to lumbago, arthritis of the knees with decreased range of motion bilaterally, hypertension, obesity, and asthma. *Id.*

Regarding Plaintiff's spinal condition, an October 2018 MRI showed that Plaintiff suffered from degenerative disc disease with facet hypertrophy and severe central stenosis at the L5-S1 level, secondary to epidural lipomatosis. *Id.* at 21. Dr. Jasing, an internist, noted Plaintiff possessed an antalgic gait, and measured Plaintiff's BMI at 36.2 and her blood pressure at 161/95,

both abnormally high readings.  *Id.*  Based on his observations, Dr. Jasing recommended that Plaintiff receive a nerve block, but Plaintiff declined the procedure.  *Id.*  Ultimately, Dr. Jasing diagnosed Plaintiff with lumbar spinal stenosis and spondylosis, epidural lipomatosis, diabetic neuropathy, unspecified hip pain, and meralgia parasthestica of the right lower limb.  *Id.*

In terms of mental health, Plaintiff's primary care provider noted depression in Plaintiff's June 2016 diagnosis, but stated that Plaintiff reported no anxiety, and removed the depression diagnosis at subsequent visits.  *Id.* at 20.  Through December 2016, records indicate that Plaintiff did not present as anxious or depressed.  *Id.*  Nevertheless, Plaintiff underwent outpatient mental health treatment at Rutgers University Behavioral Healthcare from January 2017 to January 2018.  Throughout early 2017, Plaintiff reported as depressed and anxious, among other mental impairments.  *Id.*  Her treatment provider noted that Plaintiff was "lethargic, anxious, depressed and tearful during her interactions."  *Id.*  However, by July 2017, records indicate that Plaintiff's mental health symptoms had improved after treatment.  *Id.*  By the end of 2017, the claimant exhibited as more social and less depressed and anxious than previously reported, due largely to the intervention of medication and behavioral activation techniques.  *Id.* at 20–21.  Plaintiff discontinued her treatment in January 2018 after missing several appointments and becoming non-responsive to contact attempts by the treatment provider.  *Id.* at 779.

On June 2, 2016, Plaintiff filed an application for SSI, alleging disability beginning July 1, 2014, due to diabetes, lower back pain, knee pain, sleep apnea, and obesity.  *Id.* at 183–86, 201.[2]  Plaintiff's claim for SSI was denied initially on November 9, 2016, and upon reconsideration on April 5, 2017.  *Id.* at 107–11, 115–17.  Plaintiff requested and was granted a hearing before an

---

[2] This was not Plaintiff's first application; Plaintiff has applied for, and been denied, disability benefits multiple times since 2012.  Tr. at 209–10.

3

ALJ held in November 2018, at which Plaintiff and an impartial vocational expert testified. *Id.* at 30–75.

On March 7, 2019, the ALJ determined Plaintiff was not disabled from June 2, 2016 through the date of the ALJ's decision because Plaintiff could perform a significant number of sedentary, unskilled jobs existing in the national economy, and thus the ALJ denied Plaintiff's claim for SSI. *Id.* at 12. The Appeals Council found no basis to review the ALJ's decision. *Id.* at 1–6. This appeal followed. ECF No. 1.

### III.  LEGAL STANDARD

#### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g); 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may

not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

**B.     Determining Disability**

In order to be eligible for benefits under the SSA, a claimant must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).  A claimant is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [she] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

**C.     Sequential Evaluation Process**

The Social Security Administration follows a five-step, sequential evaluation to determine

whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit her ability to work. *Id.* Third, if she has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Id.* at 555.

### IV.   DISCUSSION

#### A.   Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 2, 2016, the application date. Tr. at 14. At step two, the ALJ found Plaintiff had the following severe impairments: diabetes mellitus type II with diabetic neuropathy,

lumbago, arthritis of the bilateral knees, chronic obstructive pulmonary disease, asthma, obstructive sleep apnea, obesity, depressive disorder, and anxiety disorder. *Id.* at 14. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings. *Id.* at 15–18. Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, the ALJ then formulated Plaintiff's RFC. *Id.* at 18–22. Based on all the evidence in the record, the ALJ found that during the relevant period, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with several exceptions. *Id.* at 18. The ALJ's RFC stated Plaintiff "can occasionally climb ramps and stairs, balance and stoop; but could never climb ladders, ropes or scaffolds, kneel, crouch, crawl, work at unprotected heights, or work with exposed machinery." *Id.* Further, the RFC calculation noted that Plaintiff "would need to avoid working with, or in the vicinity of hazards, such as explosives, equipment with the potential to administer an electric shock, radiation and toxic and caustic chemicals. She could however, tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity and/or pulmonary irritants such as fumes, odors, dusts, gases and poor ventilation." *Id.* Additionally, Plaintiff's RFC required "the ability to stand for one to two minutes at her workstation after thirty minutes of sitting, and the ability to sit for one to two minutes at her workstation after thirty minutes and standing and walking. . . [with] use of an assistive device, operated with her dominant hand, when standing and/or walking." *Id.*

At step four, the ALJ determined Plaintiff could no longer perform her past relevant work as a recreation aide or patient transporter because the physical demands of those jobs exceeded her RFC. *Id.* at 22–23. At step 5, based on Plaintiff's background, work experience, RFC, and the vocational expert's testimony, the ALJ concluded that Plaintiff could perform a significant number

of sedentary, unskilled jobs existing in the national economy. *Id.* at 22. Accordingly, the ALJ found Plaintiff not disabled and denied Plaintiff's application for SSI. *Id.* at 24.

### B. Plaintiff's Arguments on Appeal

In the instant appeal, Plaintiff asserts that the ALJ committed two errors. First, Plaintiff argues that the ALJ did not adequately consider the combined effects of Plaintiff's obesity with her other impairments in the medical equivalence analysis at step three nor in the RFC determination. ECF No. 12 at 10–22. Second, Plaintiff argues that the RFC determination is not supported by substantial evidence, and that the ALJ did not appropriately consider Plaintiff's subjective complaints of pain. *Id.* at 23–35. The Court will consider these arguments in turn.

#### 1. The ALJ's Assessment of Plaintiff's Obesity

This Court finds that the ALJ adequately considered the combined effects of Plaintiff's obesity with her other impairments throughout his analysis. The Third Circuit Court of Appeals has held that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (remanding because the ALJ did not discuss the cumulative impact of Plaintiff's obesity and other impairments on her functional capacities). In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain her reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Id.* For example, in *Gullace v. Colvin*, the court held that the ALJ did not meaningfully consider Plaintiff's obesity at the step three medical equivalency analysis because he: (1) did not discuss any of the relevant evidence regarding Plaintiff's obesity; and (2) did not expressly find that Plaintiff's obesity, along with his other impairments, did not equal the severity of a listed impairment. No. 15-7630, 2017 WL 714356, at *9 (D.N.J. Feb. 23, 2017). Here, unlike

in *Gullace*, the ALJ dedicated the bulk of his opinion to a discussion of the relevant evidence under eight specific Listings and noted the possible adverse impact obesity may have on its own and on Plaintiff's co-existing impairments. *See* Tr. at 18 ("I have fully considered obesity in the context of all of the listings considered for the claimant's other body systems."). Further, the ALJ expressly found that Plaintiff's obesity, along with her other impairments, did not medically equal the severity of a Listing impairment. *Id.* ("I find that the claimant's obesity does not singularly or in combination meet or equal any listing when assessing it's effect on other body functions."). Moreover, the ALJ explicitly referred to Social Security Ruling 02-1p for guidance. *Id.* ("I have evaluated the impairment herein pursuant to the extensive and detailed guidelines set forth in SSR-01-1p"); *see Cooper v. Comm'r of Soc. Sec.*, 268 Fed. Appx. 152, 156 (3d Cir. 2008) (stating that an ALJ should consult and refer to Social Security Ruling 02-1p when a plaintiff makes a specific request for consideration of obesity in conjunction with other impairments). Accordingly, this Court finds that the ALJ appropriately considered Plaintiff's obesity as part of the medical equivalency analysis at step three.

The ALJ considered the entire record, including the effects of Plaintiff's obesity, in formulating Plaintiff's RFC. In doing so, the ALJ noted that in July 2016, Plaintiff had a BMI of 44.26 (Tr. at 19); she weighed 266 pounds in November 2016 (*Id.* at 20); she was diagnosed with morbid obesity in June, August, and December 2016, and March 2017 (*Id.* at 20–21); and her BMI was 36.2 in October 2018 (*Id.* at 21). Nevertheless, the ALJ showed that the same medical records documenting Plaintiff's obesity generally showed Plaintiff's physical examinations to be primarily unremarkable. *Id.* at 19. For example, in September 2016, Plaintiff reported that "she was able to perform her usual activities and did not experience any fatigue, fever or weakness." *Id.* at 20. Further, the ALJ pointed to medical evidence showing Plaintiff exhibited normal respiratory

function, standard cardiovascular function, intact muscoskeletal range of motion, no gross neurological or motor deficits, regular sensations and reflexes, intact fine and gross bilateral hand function, and a normal mental status. *Id.* at 18–22. The ALJ further supported his conclusion by reference to two record-reviewing state agency medical consultants, who opined that Plaintiff could perform a range of light work despite her obesity. *Id.* at 21, 82–84, 96–98. Thus, contrary to Plaintiff's contentions, her obesity was amply considered by the ALJ, and the ALJ's conclusions regarding Plaintiff's obesity were rationally supported by substantial evidence.

Plaintiff has not pointed to any evidence in the record indicating that she required additional RFC limitations due to her obesity. Mere speculation that obesity combined with other impairments necessitates more significant RFC limitations is insufficient to overturn the ALJ's analysis. *See Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021) (a "generalized response" that obesity would affect another impairment is insufficient); *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (claimant must establish not just that "obesity can impair one's ability to perform basic work activities," but must also "specify[] how her obesity . . . affected her ability to perform basic work activities.").

Furthermore, the cases cited by Plaintiff in support of remand are distinguishable from the case at hand. For example, in *Diaz*, the Third Circuit issued a remand because there was no discussion or "analysis of the cumulative impact of [the plaintiff]'s obesity and other impairments on her functional capabilities." 577 F.3d at 504 ("Were there *any* discussion of the combined effect of [Plaintiff's] impairments, we might agree with the District Court."). Similarly, in *Halsey v. Comm'r of Soc. Sec.*, this Court issued a remand because the ALJ "merely explained the possible adverse impact obesity may have on co-existing impairments in general," but did not discuss any evidence in connection with the plaintiff's obesity or conclude whether the plaintiff's obesity had

an adverse effect on her work function. No. 15-6311, 2016 WL 6304444, at *5 (D.N.J. Oct. 25, 2016).  Here, by contrast, the ALJ did not just mention the possible effects of obesity on Plaintiff's impairments, but explicitly stated that he "fully considered obesity in the context of all of the listings considered for the claimant's other body systems." Tr. at 18.  Moreover, the ALJ discussed Plaintiff's obesity throughout step three by reference to the record evidence of Plaintiff's BMI, subjective complaints of pain, respiratory function, cardiovascular function, range of motion, neurological and motor deficits, reflexes, hand function, and mental status.  *Id.* at 18–22.  Therefore, unlike in *Diaz* and *Halsey*, the ALJ here meaningfully considered Plaintiff's obesity and supported his determinations with substantial evidence.

## 2. Formulation of Plaintiff's RFC

Next, Plaintiff challenges the ALJ's formulation of Plaintiff's RFC, specifically contending that the record evidence does not support the ALJ's decision to prescribe sedentary work.  *Id.* at 28.  RFC is purely an administrative finding, not a medical assessment, and thus the responsibility for assessing and assigning a claimant's RFC rests solely with the ALJ, not with any particular medical source.  20 C.F.R. §§ 404.1527(d)(2)-(3); 404.1546(c).  The ALJ reviews "all of the relevant medical and other evidence" in the record and resolves conflicts in the evidence in determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3).  Further, the ALJ must "provide a 'clear and satisfactory explication' of the basis on which his determination rests." *Mays v. Barnhart*, 78 F. App'x 808, 812 (3d Cir. 2003) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

Here, despite Plaintiff's contention that the ALJ did not provide sufficient evidentiary explanation for Plaintiff's ability to perform sedentary work – the least physical demanding type of work under the SSA – the opinion shows that the ALJ comprehensively examined the evidence.

11

The ALJ provided a thorough elucidation of which evidence he considered, which evidence he found particularly credible and persuasive, and how that evidence informed his RFC formulation. ECF No. 12 at 27–30; Tr. at 18–22. In particular, the ALJ expressly contemplated Plaintiff's treatment history, diagnostic studies, objective examination findings, and hearing testimony to formulate the RFC. *Id.* The ALJ paid particular attention to Plaintiff's ability to sit or stand for periods of time, her ability to tolerate pain in everyday settings, and her ability to work despite mental health impairments restricting her functionality. *Id.* The ALJ found it persuasive that Plaintiff did not require invasive treatment or inpatient hospitalization for her alleged impairments, and reported having "0" pain on a pain scale during multiple office visits. Tr. at 18–22 (citing Tr. at 687–88, 697, 706, 716–18, 721–24, 727, 729, 732). Additionally, notwithstanding Plaintiff's physical ailments, the ALJ noted that Plaintiff sometimes failed to take her prescribed diabetes medication, declined interventions like injections or surgery, and continued to smoke cigarettes throughout the entire period at issue. *Id.* at 19, 21 (citing Tr. at 716, 718, 721, 724, 727, 729, 732, 782). With respect to her alleged mental health impairments, the ALJ expressly discussed Plaintiff's outpatient treatment and highlighted that Plaintiff reported she was less depressed and anxious than she had been prior to treatment. *Id.* at 20–21 (citing Tr. 734–52, 757–79). Moreover, the ALJ supported his RFC finding by reference to Plaintiff's continued ability to perform daily activities despite her impairments. *Id.* at 16–17 (citing Tr. 223–26, 251–55) (showing Plaintiff's self-submitted function reports which reveal that during the relevant period, Plaintiff prepared meals, drove, shopped in stores, managed her finances, performed household chores, attended church, crocheted, and socialized with her best friend and two nieces).

Furthermore, the ALJ's RFC formulation is consistent with the medical opinions of record. Notably, no treating, examining, or record-reviewing medical source suggested a more restrictive

RFC formulation than that articulated by the ALJ. *See, e.g., Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95-96 (3d Cir. 2004) (a lack of supporting medical opinion evidence from treating sources can be strong evidence that the claimant is not disabled). For example, Dr. Patel reported that, consistent with the ALJ's RFC, while Plaintiff's spine, respiratory impairments, and bilateral diabetic neuropathy would limit her ability to walk for long periods, her ability to sit would only be mildly impaired. Tr. at 21 (citing Tr. at 686–733, 753–56, 780–83). Similarly, the ALJ partially relied on the opinions of a record-reviewing state agency medical consultant, who concluded that Plaintiff could perform a range of light work and that Plaintiff's mental impairments were not severe. *Id.* at 22 (citing Tr. at 686–705, 734–52, 757–79). In fact, the ALJ determined that the overall record supported *greater* limitations than those proposed by the state medical consultants, and those limitations are reflected in the ALJ's RFC formulation. Thus, "the ALJ detailed the record evidence in a narrative discussion throughout several single-spaced pages with specific citations to the record, explicitly considered Plaintiff's functional limitations, and crafted an RFC that reflected those limitations." *Nieves v. Saul*, No. 2:18-CV-10748, 2021 WL 941923, at *11 (D.N.J. Mar. 12, 2021). Accordingly, the Court concludes that the ALJ's formulation of Plaintiff's RFC was based on substantial evidence.

Finally, Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints of pain. ECF No. 12 at 31–35. The SSA provides a two-step framework for evaluation of a claimant's subjective complaints. *See* 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). At step one, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 404.1529. If a medically determinable impairment is found, the ALJ proceeds to step two. *Id.* At step two, the ALJ must evaluate the "intensity, persistence,

13

and limiting effects" of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *Id.* The ALJ may discredit the claimant's statements as to the "intensity, persistence, and limiting effects" of their symptoms if they are not supported by objective medical evidence and other evidence. *Id.*

Here, the ALJ properly followed the two-step framework for evaluating Plaintiff's subjective complaints. *See* Tr. at 18–22. At step one, the ALJ determined that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. *Id.* at 19. However, at step two, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ then explained his decision to discredit Plaintiff's statements of disabling symptoms by pointing to specific objective medical evidence and nonmedical evidence as required by 20 C.F.R. § 404.1529(c). The evidence cited by the ALJ in support of his determination that Plaintiff's statements were not entirely credible included: Plaintiff's relatively unremarkable treatment history and examinations showing largely normal objective findings (Tr. 18–22); Plaintiff's medical records showing she reported having "0" pain on a pain scale during multiple office visits to her treating providers (*Id.* at 19–21); Plaintiff's rejection of medical intervention like injections or surgery (*Id.*); Plaintiff's improved mental health picture (*Id.* at 20–21); and Plaintiff's stated ability to perform her usual daily activities (*Id.* at 20). Therefore, substantial evidence supports the ALJ's analysis of Plaintiff's subjective complaints. *See Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding an ALJ relied on substantial evidence in discounting subjective complaints where an ALJ considered plaintiff's daily activities and objective medical reports); *see also Padgett v. Comm'r Soc. Sec.*, No. 16-cv-9414, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) (finding substantial

14

evidence supported ALJ's decision to discount plaintiff's subjective complaints where ALJ addressed plaintiff's history of medical treatment).

## V.  CONCLUSION

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** March 30th, 2022

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**
